In the Matter of the Assessment of the Cost and Expense of the Improvement of CENTRAL PARKWAY.

Supreme Court, Schenectady County, July 9, 1931.

*Borst & Smith, Liddle & Hughes* and *Harry M. Schaffer*, for the petitioners.

*Carleton H. Lewis, Corporation Counsel*, for the city of Schenectady.

HEFFERNAN, J. Petitioners have instituted this proceeding pursuant to the provisions of sections 164–166 of the Second Class Cities Law for the cancellation of assessments levied by the city of Schenectady against their properties for the improvement of an alleged public street in that city known as Central parkway on the ground that the city officials have no jurisdiction to levy the same.

The facts are not in dispute and only questions of law are involved.

In the year 1913 the city acquired by condemnation a tract of land for park purposes which is designated and known as Central Park. This land was paid for from the proceeds of bonds issued and sold by the city. Since the establishment of the park the cost and expense of the maintenance thereof and of the improvements thereto have been a charge upon the city at large either in the form of bond issues or by including the necessary sums in the city's annual park budget. On May 7, 1929, the common council of the city enacted an ordinance by which it attempted to detach from the park property a strip of land sixty feet in width along the northerly boundary extending from DeCamp avenue to Palmer avenue and designated it as a public street known as Central parkway. It is conceded that this strip of land which the common council declared to be a public highway was detached from the park property and the ordinance which assumed to make the separation so declares.

During the month of June, 1929, the petitioners herein, and others, being the owners of the property adjoining and abutting on the northerly boundary of the park, presented a petition to the common council of the city requesting that it make the improvements to Central parkway which are the basis of these assessments, in which petition they agreed to pay a certain proportion of the expense. Thereafter the city made the improvements requested and assessed the properties of petitioners, among others, their proportionate share thereof. This proceeding has for its object the vacation of that assessment. The petitioners claim that the city authorities had no power to and could not detach any land from Central Park and convert it into a public street, and that consequently the improvements in question were made to park lands exclusively and that they cannot be assessed therefor.

Land acquired by a municipality by purchase or condemnation, held strictly for public use as a park and not subject to the terms of any gift, devise, grant, bequest or other trust or condition, is

under the control of the Legislature. The municipality holds the property in trust for the use of the public and cannot use or permit its use for purposes other than those for which it was dedicated or acquired or appropriated. The Legislature may delegate to municipal corporations the regulation and control of property held for public uses. (44 C. J. 1100.)

A park may be devoted to any use which tends to promote popular enjoyment and recreation. Although primarily involving the idea of open air and space, the sentiment for artistic adornment of public places is such that the occupation in part by monuments, statues to heroes, art museums, galleries of painting and sculpture, free public libraries and other agencies contributing to the æsthetic enjoyment of eye and ear is not a perversion of the lands from park purposes. However, municipal corporations cannot without express authority from the Legislature appropriate any part of a public park to laying out streets and public highways because these uses are inconsistent with and destructive of park uses. Public parks cannot be cut up and portions thereof diverted at the pleasure of municipal bodies. Legislative permission is necessary to accomplish such a result. The Legislature may authorize the construction of a highway in the park; the city cannot.

The acquisition of the land in question for park purposes implies that it is to be enjoyed by the public at large and it cannot rightfully be appropriated by the city authorities for highway purposes or for the city's use in the management and conduct of its economic affairs.

When the city officials attempted to detach this strip of land from the park of which it was an integral part and to improve it for the purpose of converting it into a public highway their plan was impossible of accomplishment for want of power. (*Brooklyn Park Com.* v. *Armstrong*, 45 N. Y. 234; *Williams* v. *Gallatin*, 229 id. 248; *Sebring* v. *Quackenbush*, 120 Misc. 609; affd., 214 App. Div. 758; *People ex rel. Speyer* v. *Mosier*, 112 N. Y. Supp. 307.)

Respondent contends that subdivisions 2 and 7 of section 20 of the General City Law justify its procedure. It seems to me that the statute upon which it relies is not to be so construed. Subdivision 2 (as amd. by Laws of 1929, chap. 597) provides among other things that "the rights of a city in and to its * * * parks * * * are hereby declared to be inalienable, except in the cases provided for by subdivision seven of this section." Subdivision 7 (as amd. by Laws of 1927, chap. 221) authorizes a city to lay out, establish, construct, alter, maintain and discontinue streets, sewers and drainage systems and to establish markets, parks, play-

grounds and other public places and upon the discontinuance of such to sell and convey the same. The word " discontinue " in that subdivision does not refer to parks. Under this subdivision a city may sell and convey only that which it may discontinue. Since it cannot discontinue parks it cannot sell or convey the same. Consequently the inalienability of parks provided for in subdivision 2 of the section in question is in nowise affected by subdivision 7. The State retains complete authority over the city as to the alienation of park lands. The learned counsel for respondent also urges that the petitioners who signed the request for the improvements in question are now estopped from asserting the illegality thereof. In this it seems to me he is mistaken. The signers of the petition had the right to assume that the city in establishing a street would do so in a legal manner. The city having failed to do so, the petitioners are not estopped from challenging the validity of its proceeding. Legislative sanction was necessary to effectuate this purpose. (*Matter of Sharp*, 56 N. Y. 257; *Hoy* v. *Hubbell*, 125 App. Div. 60.)

Petitioners in their brief urge other objections to set aside these assessments. In view of my conclusion it is unnecessary to discuss them.

The petitioners are, therefore, entitled to an order vacating and annulling the assessments against their properties, together with their costs and disbursements.